UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


LABORERS' PENSION TRUST FUND - DETROIT
AND VICINITY; LABORERS VACATION AND
HOLIDAY TRUST FUND - DETROIT AND
VICINITY; LABORERS' AND POURED
CONCRETE WORKERS INSURANCE FUND;
LABORERS' AND POURED CONCRETE
WORKERS INDUSTRY STEWARD FUND;
LABORERS' ANNUITY FUND - DETROIT AND
VICINITY; and MICHIGAN LABORERS'
TRAINING FUND, trust funds established under, and
administered pursuant to, federal law; LOCAL
UNION NO. 1076, LABORERS' INTERNATIONAL
UNION OF NORTH AMERICA, AFL-CIO; and
LOCAL UNION NO. 334, LABORERS'
INTERNATIONAL UNION OF NORTH
AMERICA, AFL-CIO,

        Plaintiffs,

                                  CASE NO. 03-CV-40240-DT
v.                             JUDGE PAUL V. GADOLA
                                MAGISTRATE JUDGE PAUL KOMIVES

DAVID LANGE, d/b/a ABLE CONCRETE WALL,
INC.; UNION LAKE FOUNDATIONS, INC.; and
ACCURA CONCRETE WALLS, INC.,

        Defendants.

_____/


## REPORT AND RECOMMENDATION

I.      RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      A.    *Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      B.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
      C.    *Count I: Confirmation of the Committee's Award* . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
      D.    *Count II: Amount Owing as Result of Audit* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
      E.    *Attorney Fees* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
      F.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
III.     NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

I.      <u>RECOMMENDATION</u>: The Court should grant in part and deny in part plaintiffs' motion for summary judgment.  The Court should also deny defendants' cross-motion for partial summary judgment.  Specifically, the Court should conclude that defendants' challenges to the arbitrator's award are untimely as a matter of law, and therefore that plaintiffs are entitled to summary judgment with respect to Count I of their complaint, seeking confirmation of the arbitrator's award.  However, the Court should conclude that genuine issues of material fact remain with respect to the accuracy of the audit performed on plaintiffs' behalf, rendering summary judgment inappropriate on Count II of plaintiffs' complaint, seeking a monetary award based on the audit.

II.     <u>REPORT</u>:

A.      *Background*

Plaintiffs, two local unions of the Laborers' International Union of North America, AFL-CIO, and several funds established for the benefit of their members (collectively "the Union"), bring this action pursuant to section 301 of the Labor and Management Relations Act (LMRA), 29 U.S.C. § 185, and sections 502(a)(3) and 515 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1132(a)(3), 1145.  Plaintiff's seek enforcement of an arbitration award for fringe benefit contributions.  Although the parties disagree on some particulars, the basic facts relevant to the instant motions are for the most part procedural, and undisputed.

Defendant Able Concrete Walls ("Able Concrete") and the Unions entered into a labor agreement.  On March 9, 1992, Local 1076 filed a grievance against Able Concrete pursuant to the collective bargaining agreement (CBA).  The grievance was referred to a "Labor Relationship Committee," which on June 22, 1992 issued an award in favor of Local 1076.  The Committee ordered Able Concrete to pay $114,329.72 in fringe benefit contributions and liquidated damages.  When Able

Concrete failed to comply with this award, plaintiffs filed suit in this Court against defendants Able Concrete and David Lange. Plaintiffs later filed an amended complaint naming as a defendant Union Lake Foundations ("Union Lake"), asserting that Union Lake was an alter ego of defendants Able Concrete and Lange. On June 12, 1993, the Court entered an Order granting plaintiffs' motion for summary judgment, enforcing the Committee's award, and ordering both that defendant Lange was personally liable for the corporate obligations of Able Concrete, and that Union Lake was liable as the alter ego of Able Concrete. *See Laborers' Pension Trust Fund–Detroit & Vicinity v. Lange*, 825 F. Supp. 171 (E.D. Mich. 1993).

On March 1, 2001, defendant Accura Concrete Walls, Inc. (Accura), became a signatory to the 1999-2000 collective bargaining agreement between Locals 334 and 1076, and the Poured Concrete Walls Association. Accura is also a signatory bo the 2000-03 agreement between the parties. In accordance with those agreements, the Union filed a grievance against Accura, alleging that Accura was formed by defendant Lange to evade his obligations under the Court's prior judgment, and that Accura was an alter ego of Able Concrete. The Union also alleged that Accura had failed to produce books and records so that a payroll audit could be performed. The grievance was referred to a Labor Relationship Committee pursuant to the CBA, which issued an award in favor of the Union. In its award, the Committee found that Accura was an alter ego of Able Concrete, and that Accura had failed to provide its books and records for a payroll audit. The Committee awarded two specific forms of relief:

> 1. Accura Concrete Walls, Inc. is ordered to produce the books and records covering the period of March 2001 to present, so that a payroll audit may be performed, and Accura Concrete Walls, Inc. is further ordered to pay any fringe benefit contributions found owing as a result of such audit, together with interest and costs, and any attorney fees. LRC orders that these books and records be produced within two (2) weeks from receipt of this decision.

3

>    2.    Accura Concrete Walls, Inc. is ordered to pay forthwith the full amount
> of the June 22, 1992 Labor Relationship Committee award, as enforced by Judge
> Gadola in his June 12, 1993 Order and Judgment, less any payments already made,
> together with interest and costs and any attorney fees incurred by the Complainant in
> bringing the grievance in this matter.

Compl., Ex. E, at 8-9.

Plaintiffs' filed a complaint in this Court on September 11, 2003, seeking to enforce the

Committee's award. The complaint asserts two counts. In Count I, plaintiffs seek an order confirming

the Committee's award. In Count II, plaintiffs seek an order enforcing the results of the audit and

requiring defendants to produce additional books and records to complete the audit. As relief,

plaintiffs seek: (1) confirmation of the Committee's award; (2) an award $12,885.39, representing the

known unpaid audited indebtedness from March 2001 through September 2002; (3) an order requiring

defendants to make available to an auditor any additional books or records necessary to complete the

audit fro the period from March 2001 through September 2002; (4) an award of any additional

amounts found owing as a result of the completed audit; and (5) costs, interest, and attorney fees.

On September 17, 2004, the parties filed cross-motions for summary judgment. In their

motion, plaintiffs argue that: the Court should specifically enforce the Committee's award; defendants

are barred from challenging the validity of the award because their challenge is untimely; the Court

should order defendants to pay the amount of the audit as request in Count II of their complaint; and

they are entitled to attorney fees. Defendants filed a response to this motion on October 8, 2004.

Defendants argue that: the Committee's award is defective for the reasons set forth in their motion

for summary judgment (discussed more fully below); their affirmative defenses were asserted in a

timely fashion; there was no arbitration award with respect to any amount as claimed in Count II, and

material questions of fact remain with respect to this issue; and plaintiffs are not entitled to attorney

fees.  Plaintiffs filed a reply on October 21, 2004.

In their cross-motion for partial summary judgment, defendants argue that they are entitled to summary judgment on Count I, relating to alter ego liability, because the Committee's award was defective in a number of respects.  Specifically, defendants contend that: the Committee was without power to decide the alter ego question; the Committee's award impermissibly modified this Court's judgment in the prior action; and plaintiffs' grievance was untimely.  Plaintiffs filed a response to this motion on October 12, 2004.  Plaintiffs argue that: defendants' challenges to the award are barred due to their untimeliness; plaintiffs' grievance was timely filed; and the Committee did not modify this Court's prior judgment.  Defendants filed a reply on October 21, 2004.

B.      *Legal Standard*

Under Rule 56, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "A fact is material only if its resolution will affect the outcome of the lawsuit."  *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248).  In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor.  *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The moving party has the initial burden of showing the absence of a genuine issue of

5

material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451

(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  To meet this burden, the moving party

need not produce evidence showing the absence of a genuine issue of material fact.  Rather, "the

burden on the moving party may be discharged by 'showing' – that is, pointing out to the district

court – that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*,

477 U.S. at 325.  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving

party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d

446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

587 (1986)); *see also*, FED. R. CIV. P. 56(e).

To create a genuine issue of material fact, however, the non-movant must do more than

present some evidence on a disputed issue.  As the Supreme Court has explained:

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving
> party for a jury to  return a verdict for that party.  If the [non-movant's] evidence is
> merely colorable, or is not significantly probative, summary judgment may be
> granted.

*Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  Thus, "[t]he existence of a

mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there

must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland*,

344 F.3d at 613.

## C.      *Count I: Confirmation of the Committee's Award*

As noted above, the Committee found that defendant Accura was an alter ego of defendant

Able concrete, and thus liable for the amount owing on the 1992 award, as enforced in the Court's

order in the prior case between the parties.  Defendants contend that this award was defective for a

number of reasons.  Plaintiffs contend that any challenges to the award are untimely, and that even if timely defendants' challenges fail on the merits.  Because defendants' challenge to the Committee's award is untimely, the Court should grant plaintiffs' motion for summary judgment and deny defendants' motion for summary judgment with respect to Count I of the complaint.

Plaintiffs bring this action to confirm the Committee's award pursuant to § 301 of the LMRA. Although the LMRA does not itself contain a limitations period, in *United Auto Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696 (1966), the Court noted the long-established rule that "state statutes of limitations govern the timeliness of federal causes of action unless Congress has specifically provided otherwise." *Id*. at 703-04.  The Court therefore held that "the timeliness of a § 301 suit, such as the present one, is to be determined, as a matter of federal law, by reference to the appropriate state statute of limitations." *Id*. at 704-05.  In *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56 (1981), the Court extended this holding to a § 301 action which was not a straight contract action, but was instead one to vacate the award of an arbitration panel.  *See id*. at 60-62.  Finally, in *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151 (1983), the Court considered a hybrid § 301/unfair representation case.  Because there was no analogous state law claim, the Court concluded that it was necessary to adopt, as a limitations period, the limitations provision in § 10(b) of the National Labor Relations Act (NLRA), "a federal statute of limitations actually designed to accommodate a balance of interests very similar to that at stake" in the case before the Court.  *Id*. at 169.  The Court disavowed any intention of retreating from the general rule that analogous state statutes of limitations are controlling, but further explained:

> Nevertheless, when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking, we have not hesitated to turn away from state law.

7

*Id*. at 171-72.

In *Occidental Chem. Corp. v. International Chem. Workers Union*, 853 F.2d 1310 (6th Cir. 1988), the Sixth Circuit harmonized these cases with respect to a § 301 claim brought to vacate an arbitrator's award in a Michigan district court. The Court began its analysis by noting that there were three statutes of limitations which arguably could supply the appropriate rule: (1) the 21 day period contained in the Michigan Arbitration Act, MICH. COMP. LAWS § 600.5001; (2) the sixth month period contained in § 10(b) of the NLRA; or (3) the three month period contained in § 12 of the United State Arbitration Act (USAA).[1]  *See Occidental Chem.*, 853 F.2d at 1313.

The court rejected the limitations provision of the Michigan Arbitration Act because the provision explicitly excepts labor contracts from its scope. *See id*. at 1315. Having found no other Michigan limitations provision which might be appropriate the court was therefore forced to choose between the sixth month period in § 10(b) of the NLRA and the three month period in § 12 of the USAA.[2]  The court chose the latter period, reasoning that § 12 "is found in a federal statute dealing specifically with arbitration, and provides a short limitation period that is nearer in length to the typical state statute of limitations for actions to vacate an arbitration award." *Occidental Chem*., 853 F.3d at 1315. The court also reasoned that the factors which led the Supreme Court to adopt § 10(b)

---

[1]The USAA was originally passed in 1925. In 1947, it was formally codified, at which time it was renamed the Federal Arbitration Act (FAA). *See Lynn v. General Elec. Co.*, No. 03-2662, 2005 WL 701270, at \*4 (D. Kan. Jan. 20, 2005). Although technical proper to refer to the Act as the FAA, courts continue to use both titles. *See American Postal Workers Union v. United States Postal Serv.*, 823 F.2d 466, 469 (11th Cir. 1987); *Wilkerson v. Nelson*, 395 F. Supp. 2d 281, 285 (M.D.N.C. 2005). To maintain consistency with the Sixth Circuit's decision in *Occidental Chemical*, I use "USAA" throughout this Report.

[2]Section 12 of the USAA specifically provides: "Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12.

of the NLRA for hybrid § 301/unfair representation cases in *DelCostello* were not present in the straight § 301 action to challenge an arbitration award, reasoning that "[g]iven the desirability of a rapid resolution of disputes over an arbitrator's award, three months appears to us to be a more appropriate limit than six months for an action attacking the validity of an award." *Occidental Chem.*, 853 F.3d at 1316.

Thus, under *Occidental Chemical*, defendants had three months in which to challenge the Committee's award. Because defendants did not file their answer to the complaint and affirmative defenses (their first notice of an intent to challenge the arbitrator's award) until more than three months after the Committee's April 14, 2003, award, their challenges are untimely, and thus barred. This is so even though defendants raise their challenges only in defense of plaintiffs' action to confirm the award. As the Sixth Circuit explained in *Occidental Chem.*, it is a "settled rule that objections that might have formed the basis for a timely action to vacate an award may not be raised as defenses in an action to confirm the award after the limitations period for an action to vacate has expired." *Occidental Chem.*, 853 F.2d at 1317.

Defendants do not dispute this analysis of *Occidental Chem.*, but contend that later rulings of the Sixth Circuit have replaced the reasoning of that case, and compel adoption of a different limitations period. In support of this argument, defendants rely on the court's decision in *Bacashihua v. United States Postal Serv.*, 859 F.2d 402 (6th Cir. 1988). This case, however, does not call into question either the reasoning or holding of *Occidental Chem.*; on the contrary, *Bacashihua* explicitly adopts and applies *Occidental Chem.* In *Bacashihua*, the plaintiff, a post worker, brought an action under the USAA to modify an arbitration award. However, the court concluded that the underlying contract was outside the scope of § 1 of the USAA, and thus the plaintiff could not maintain a USAA

action.  In reaching this conclusion, the court noted that *Occidental Chem.* "determined that § 1's exclusion does pertain to labor contracts."  *Bacashihua*, 859 F.2d at 404.  Defendants maintain that, "[s]ince the 6th Circuit, in *Bacashiwua* [sic], has found the Federal Arbitration Act does not apply to labor contracts, its statute of limitations cannot be applied in this case."  Br. in Supp. of Def.s' Resp. to Pl.s' Mot. for Summ. J., at 7.  The Court should reject this argument.

Nothing in *Bacashihua* contradicts *Occidental Chem.*, because *Occidental Chem.* did not purport to *apply* the USAA to the labor contract at issue in the case.  Rather, the *Occidental Chem.* court merely *borrowed* the USAA's limitations provision in applying § 301 of the LMRA.  As the *Bacashihua* court noted, it was the *Occidental Chem.* court itself which noted the inapplicability of the USAA to labor contracts.  *See Bacashihua*, 859 F.2d at 404; *Occidental Chem.*, 853 F.2d at 1315. The *Occidental Chem.* court explicitly considered and rejected the claim raised by the dissent, which was essentially the same as the argument advanced by defendants.  Because the court's reasoning explicitly rejects defendants' argument, it is worth quoting at length:

> However, the USAA does contain an exclusion with respect to labor contracts.  In *Paperworkers Union v. Misco, Inc.*, 484 U.S. 29, 108 S. Ct. 364, 98 L.Ed.2d 286 (1987), the Court discussed the USAA disclaimer as follows:
>
>> The Arbitration Act does not apply to "contracts of employment of . . . workers engaged in foreign or interstate commerce," 9 U.S.C. § 1, but *the federal courts have often looked to the Act for guidance in labor arbitration cases*, especially in the wake of the holding that § 301 of the Labor Management Relations Act of 1947, 61 Stat. 156, empowers the federal courts to fashion rules of federal common law to govern "[s]uits for violation of contracts between an employer and a labor organization" under the federal labor laws. . . . [string citation omitted]
>
> 108 S. Ct. at 372 n.9 (emphasis added).  Without the benefit of this comment by the Supreme Court, in an action to vacate an award the Eleventh Circuit "look[ed] to the [USAA] for guidance" and "borrowed" the three-month period of § 12 while declining to apply it "directly."  *Postal Workers v. United States Postal Service*, 823 F.2d 466, 476 (1987).
>
> The dissent appears to be based on the conclusion that this court has "paradoxically adopt[ed] the United States Arbitration Act (USAA) standard as the

> appropriate one," after rejecting the Michigan act that contains exclusionary language similar to that of the USAA.  This argument overlooks the fact that, despite the language of the USAA, courts may look to it for guidance in labor arbitration cases, *Paperworkers Union v. Misco, Inc.*, and borrow its three-month period while not applying it directly.  *Postal Workers v. United States Postal Service*.  This is the procedure we have approved in the present case.

*Occidental Chem.*, 853 F.2d at 1315-16 (emphasis and alterations, except for omission of string citation, in original).

Further, the *Bacashihua* court explicitly adopted this reasoning in concluding that the plaintiff in that case did not have a viable claim under § 301 of the LMRA.  The court explained that, even if the plaintiff had properly plead a § 301 claim, any such claim was untimely because it was not filed within the three month period provided in § 12 of the USAA.  The court explained the reasoning and holding of *Occidental Chem.*, and reaffirmed the holding of that case: "We therefore follow the procedure adopted in *Occidental* and conclude that the petition to modify the arbitration award filed by Bacashihua and the Union was subject to a three-month limitations period, and was therefore untimely."  *Bacashihua*, 859 F.2d at 406.

In light of both the court's rejection of defendants' argument in *Occidental Chem.* and the reaffirmation of the court's approach in *Bacashihua*, it is unsurprising that defendants are unable to point to a single case reading *Occidental Chem.* and *Bacashihua* as they wish this Court to read them.  It is equally unsurprising to find that both the Sixth Circuit and the Michigan district courts have consistently applied the holding of *Occidental Chem.* to § 301 actions seeking to vacate an arbitration award.  *See Garcia v. Michigan Educ. Ass'n*, No. 91-1866, 1992 WL 13922, at *1 (6th Cir. Jan. 28, 1992); *International Union, United Automobile, Aerospace & Agric. Implement Workers of Am. Local 771 v. Micro Mfg., Inc.*, 895 F. Supp. 170, 171 (E.D. Mich. 1995) (Gadola, J.); *Laborers' Pension Trust Fund*, 825 F. Supp. at 175.  To the extent that defendants challenge the reasoning of *Occidental*

11

*Chem.*, their arguments are irrelevant. "Regardless of whether [*Occidental Chem.*] was rightly or wrongly decided, this Court is bound by the decisions of the Sixth Circuit until they are vacated or overruled." *Michigan Bell Tel. Co. v. Airtouch Cellular, Inc.*, No. 00-CV-70034, 2002 WL 551043, at *2 (E.D. Mich. Mar. 27, 2002) (Friedman, J.); *see also*, *United States v. Gonzalez-Ruiz*, 369 F. Supp. 2d 1151, 1157 (N.D. Cal. 2005).

Defendants also contend that, because plaintiffs assert claims under both the LMRA and ERISA, the most analogous limitations provision is Michigan's six year statute of limitations for contract actions. In support of this argument, they rely on the court's decision in *Central States S.E. & S.W. Areas Pension Fund v. Kraftco, Inc.*, 799 F.2d 1098 (6th Cir. 1986). In *Kraftco*, the plaintiff pension fund brought an action to recover delinquent pension contributions under by § 301 of the LMRA and §§ 502 and 515 of ERISA. The Court held that, for purposes of the ERISA claim, the suit for breach of the trust agreements was in the nature of a suit for breach of written contract, and thus that Tennessee's six-year limitation period for contact actions applied to the plaintiff's claims. *See id.* at 1105. The court also rejected the defendant's argument that, under the Supreme Court's decision in *DelCostello*, the court should apply the six month limitation period found in § 10(b) of the LMRA. The court explained that *DelCostello* involved a hybrid § 301/unfair representation claim, which the Supreme Court found necessitated a uniform federal limitations period and which involved issues of labor law which required speedy resolution. *See Kraftco*, 799 F.2d at 1106-07. In the case before the court, on the contrary, the plaintiffs' claims did not implicate the unique labor law concerns present in an unfair representation case. *See id.* at 1107.

*Kraftco* is not controlling here, however, because the case before the Court is not merely a straight contract action, but is an action to confirm an arbitrator's award. While based on the

12

underlying labor agreement, an action to confirm or vacate an arbitration award is analytically distinct from a straight contract action. The Supreme Court recognized this fact in *Mitchell*, noting that although the plaintiff's claim was styled a contract action, it was in the nature of an action to vacate an arbitration award. *See Mitchell*, 451 U.S. at 61. Notwithstanding that the claim was based on the underlying labor contract, therefore, the Court found that the most analogous state limitations period was the New York statute relating to arbitration awards. *See id*. at 62-63. Thus, in a variety of contexts, "[t]he Federal Courts have clearly held that if an 'arbitration award' has been reached a § 301 suit is more closely analogized to a suit to vacate an arbitration than to an ordinary contract action." *Brown v. United Parcel Serv., Inc.*, 560 F. Supp. 146, 149 (E.D. Va. 1982); *see also*, *Trevathan v. Newport News Shipbuilding & Drydock Co.*, 752 F. Supp. 698, 704-05 & n. 11 (E.D. Va. 1990) (citing cases), *aff'd*, 944 F.2d 902 (4th Cir. 1991) (unpublished). Under *Mitchell* and its progeny, therefore, defendants' challenge to the arbitration award is governed by the most analogous limitations period relating to arbitration awards, which the Sixth Circuit has determined to be the three month limitations period in § 12 of the USAA. *See Quick Air Freight, Inc. v. Teamsters Local Union No. 413*, 613 F. Supp. 1263, 1270 (S.D. Ohio 1984) ("Inasmuch as the union, on behalf of the aggrieved employees, had to pursue the grievance and arbitration proceedings of the collective bargaining agreement before asserting its claimed breaches of the collective bargaining agreement, the most analogous state statute is one governing actions to confirm arbitration awards, not statutes governing ordinary breach of contract actions.").

In any event, this Court is, as noted above, bound by the Sixth Circuit's decision in *Occidental Chem*. Although defendants contend that the reasoning of *Kraftco* supports their argument, *Kraftco* did not purport to decide what limitations period governs an action in a Michigan district court which,

under *Mitchell*, partakes of an action to confirm or vacate an arbitration award. *Occidental Chem.* did directly address this question, and held that the appropriate limitations period is the one found in § 12 of the USAA. Against this explicit resolution of the precise issue before this Court, *Kraftco*'s reasoning is immaterial. *See Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1982) (where holding of Supreme Court case is contradicted by reasoning of another line of decisions, lower court is bound to follow the holding which is directly on point).[3] Accordingly, the Court should conclude that defendants' challenges to the arbitration award are untimely, and the Court should therefore grant plaintiffs' motion for summary judgment with respect to Count I of their complaint.

D.     *Count II: Amount Owing as Result of Audit*

In Count II of their complaint, plaintiffs seek an award of damages based on the result of the audit performed by Charles D. Nichols in accordance with the Committee's award. As a result of his audit, Mr. Nichols concluded that Accura's indebtedness for the period of March 2001 through September 2002 included: $5,321.83 to plaintiff Laborers' Poured Concrete Workers Insurance and Industry Steward Funds ("PCWI Funds"); and $7,563.56 to the Laborers' Metropolitan Detroit Fringe Benefit Funds ("Metro Funds").[4] *See* Affidavit of Charles D. Nichols, ¶ 3 & Ex. A [hereinafter

---

[3]The presence of an ERISA claim does not alter this result. In *Aloisi v. Lockheed Martin Energy Sys., Inc.*, 321 F.3d 551 (6th Cir. 2003), the Court rejected the plaintiff's attempt to enlarge the limitations period beyond the 90 day period governing arbitration awards under the analogous Tennessee limitations provision. The court explained that ERISA's savings clause "explicitly provides that it does not 'supercede' any federal law," *Aloisi*, 321 F.3d at 556 (quoting 29 U.S.C. § 1144(d)), and therefore concluded that the claim was governed by the LMRA, including the applicable 90 day limitations period. *See also*, *Sullivan v. Gilchrist*, 87 F.3d 867, 871 (7th Cir. 1996) (applying 90 day state limitations period for challenging an arbitrator's award in case alleging claims under both the LMRA and ERISA).

[4]Metro Funds is comprised of plaintiffs Pension Trust Fund, Vacation and Holiday Trust Fund, Annuity Fund, and Training Funds.

14

"Nichols Aff."].  Plaintiffs contend that they are entitled to an award by this Court of the amount of the audit, as well as on order requiring defendants to provide yearly W-2 statements and IRS 1099 Forms for the period.  Defendants counter that there remain a number of disputed issues of material fact with respect to Nichols's calculations which preclude summary judgment.

In analyzing this issue, the ordinary standards governing summary judgment apply as a general matter.  However, because ERISA imposes an affirmative duty on employers to maintain adequate records, *see* 29 U.S.C. § 1059, "[a]n evidentiary burden is imposed on employers if a fund raises genuine questions about the accuracy of the employer's record-keeping practices." *Laborers' Pension Fund v. RES Envtl. Servs., Inc.*, 377 F.3d 735, 739 (7th Cir. 2004); *see also*, *Michigan Laborers' Health Care Fund v. Grimaldi Concrete, Inc.*, 30 F.3d 692, 696 (6th Cir. 1994).  As the Seventh Circuit explained:

> Once a pension or welfare fund shows that an employer's records are deficient and produces an apparently sound accounting suggesting that money is owed, the employer could be obliged to explain why its payments to the funds are nonetheless proper.  If the explanation appears to be sufficient, then the fund must demonstrate at trial its entitlement to additional payment.  Otherwise, in the absence of an explanation by the employer, the fund would prevail on summary judgment.

*RES Envtl. Servs.*, 377 F.3d at 739 (internal quotation omitted).  Once the burden shifts to the employer, it is not enough for the employer to submit an affidavit containing generalized and conclusory allegations; rather, the employer must present specific information which disputes the audit's findings.  *See id.*  In short, "[a]n employer's failure to provide any material evidence challenging the legitimacy of an audit [provides] the basis for accepting the Fund's audit report as the correct measure of damages." *Laborers' Pension Fund v. Milco Constr., Inc.*, No. 99 C 0374, 2000 WL 1372846, at *4 (N.D. Ill. Sept. 22, 2000) (citing *Grimaldi*, 30 F.3d at 696).

Here, the Court should agree with plaintiffs that there is no genuine issue of material fact with

respect to the amount of covered work performed by Frank Cooper.  In support of their challenge to these calculations, defendants submit the affidavit of defendant David Lange, who avers that Mr. Cooper did not perform any union related activities during the relevant time period.  *See* Def.'s Br. in Supp. of Resp. to Pl.s' Mot. for Summ. J., Ex. D, ¶ 5 [hereinafter "Lange Aff."].  However, there is no documentary support for this claim, and Lange's conclusory assertion is insufficient to create a genuine issue of material fact.  *See RES Envtl. Servs.*, 377 F.3d at 739; *Trustees of the Painters Union Deposit Fund v. Ybarra Constr. Co.*, 113 Fed. Appx. 664, 668-69 (6th Cir. 2004).

Defendants also contend that they are not liable for any benefits claimed on behalf of Victor Hernandez, because Hernandez was an undocumented alien working illegally in the United States. Relying on *Sure-Tan, Inc. v. National Labor Relations Bd.*, 467 U.S. 883 (1984), defendants argue that because an illegal alien has no right to payment of wages, he should likewise be ineligible for benefits based on wages.  Defendants' argument, however, extends *Sure-Tan* beyond its holding.  In *Sure-Tan*, the Court held that the definition of "employee" under the NLRA includes undocumented workers. *See id.* at 891-92 (discussing 29 U.S.C. § 152(3)).[5]  The Court also concluded that the employer in that case had committed an unfair labor practice by reporting the employee to the Immigration and Naturalization Service.  *See id.* at 894-98.  With respect to remedies, however, the Court concluded that the NLRB lacked authority to order back pay as a remedy.  Specifically, as relevant to this case, the Court held that the Board was obliged to take into account the important Congressional objectives in the Immigration and Nationality Act (INA) by: (1) "conditioning the offers of reinstatement on the employee's legal reentry"; and (2) deeming the employees "'unavailable for work (and the accrual of

---

[5]This definition of employee applies to all provisions of the chapter governing labor under Title 29, including the LMRA.  *See* 29 U.S.C. § 142(3).

16

backpay therefore tolled) during any period when they were not lawfully entitled to be present and employed in the United States." *Id*. at 903.

The Court more recently expanded on *Sure-Tan* in *Hoffman Plastic Compounds, Inc. v. National Labor Relations Bd.*, 535 U.S. 137 (2002). In that case, the Court considered the NLRB's authority to award back pay in light of the intervening statutory changes embodied in the Immigration Reform and Control Act of 1986 (IRCA), which had explicitly made it illegal for an employer to hire and employ an undocumented worker. As the Court explained, under those statutory amendments, "it is impossible for an undocumented alien to obtain employment in the United States without some party directly contravening explicit congressional policies." *Id*. at 148. In light of these policies, the Court declined the Board's invitation to "overlook this fact and allow it to award backpay to an illegal alien for years of work not performed, for wages that could not lawfully have been earned, and for a job obtained in the first instance by criminal fraud." *Id*. at 148-49. The Court explained that such a holding would "run[] counter to policies underlying IRCA, policies the Board has no authority to enforce or administer." *Id*. at 149.

Neither *Sure-Tan* nor *Hoffman Plastic*, however, supports defendants' position. Importantly, both decisions dealt with back pay, a remedy which is designed to compensate for work which was not, but would have been, performed. They reason that, because an illegal alien would have no claim to entitlement to work but for the employer's unlawful labor act, such a worker has no claim to an entitlement to back pay as a remedy for the employer's illegal conduct. Further, the Court in *Hoffman Plastic* noted that an award of back pay would interfere with enforcement of the immigration laws because such a worker would be entitled to such an award only by remaining in the United States illegally, and because such a worker could not satisfy his duty to mitigate damages without triggering

17

new violations of the immigration laws.  *See Hoffman Plastic*, 535 U.S. at 150-51.  Nothing in either

decision, however, speaks to an undocumented worker's right to compensation for work which has

actually been performed, which does not raise these same problems.  Although there is little case law

on the subject in the context of the NLRA or the LMRA, every court that has considered the issue

under the Fair Labor Standards Act has concluded that neither *Sure-Tan* nor *Hoffman Plastic* prohibit

an award to an undocumented worker of wages earned for hours that have actually been worked by

the employee.  *See Patel v. Quality Inn South*, 846 F.2d 700, 705-06 (11th Cir. 1988); *Galaviz-Zamora*

*v. Brady Farms, Inc.*, 230 F.R.D. 499, 501 (W.D. Mich. 2005); *Zavala v. Wal-Mart Stores, Inc.*, 393

F. Supp. 2d 295, 322-23 (D.N.J. 2005); *Flores v. Amigon*, 233 F. Supp. 2d 462, 463-64 (E.D.N.Y.

2002); *Singh v. Juntla & C.D. & R's Oil, Inc.*, 214 F. Supp. 2d 1056, 1061-62 (N.D. Cal. 2002).  In

short, "*Hoffman* did not hold that an undocumented employee was barred from recovering unpaid

wages for work actually performed," nor did it "establish that an award of unpaid wages to

undocumented workers for work actually performed runs counter to IRCA."  *Flores v. Albertsons,*

*Inc.*, No. CV0100515, 2002 WL 1163623, at *5 (C.D.Cal. Apr. 9, 2002).  Thus, the Court should

conclude that plaintiffs are entitled to recover fringe benefit payments on behalf of Victor Hernandez.

Nevertheless, there do remain genuine issues of material fact with respect to two aspects of

the audit, which preclude summary judgment.  First, there are genuine issues of material fact with

respect to the hours actually worked by Jose Hernandez.  Accura initially reported that Jose Hernandez

worked 159.5 hours in September 2002.  *See* Def.s' Br., Ex. I.  In his audit, however, Mr. Nichols

concluded that Jose Hernandez worked only 156.5 hours, and recognized that plaintiff was entitled

to a reduction of three hours in the amount claimed in the audit.  *See* Nichols Aff., ¶ 8.  Nevertheless,

the audit was not amended to reflect this fact.  More importantly, defendants dispute that Jose

18

Hernandez worked 156.5 hours in September, claiming that he only worked for 116.5 hours during that month.  The payroll records submitted by defendants support this calculation, *see* Def.s' Br., Ex. J, and thus there remains genuine issues of material fact with respect to the accuracy of the audit as to Jose Hernandez.

Likewise, there remain genuine issues of material fact with respect to the actual amount which is due from defendants as a result of the audit.  In his affidavit, Mr. Nichols acknowledges that payment was received for the relevant individuals for the months of July and August 2002, except for the amounts due to the Vacation Fund.  *See* Nichols Aff., ¶ 6.  Mr. Nichols does not, however, indicate whether these payments were sufficient or insufficient, or whether they were taken into account in determining the remaining amount due from defendants.  On the contrary, however, the actual audit report shows amounts owing to the other funds for July and August.  *See id.*, Ex. A.  Thus, Mr. Nichols's affidavit itself raises a genuine issue of material fact with respect to the accuracy of the audit's conclusions as to defendants' contributions to the various funds for July and August 2002. Accordingly, the Court should deny plaintiffs' motion for summary judgment with respect to Count II of the complaint, seeking a monetary award based on the audit.

E.     *Attorney Fees*

Finally, plaintiffs seek an award of attorney fees under § 515 of ERISA, 29 U.S.C. § 1145, based on defendants' unwarranted refusal to comply with the Committee's award.  Plaintiffs' request, within its motion for summary judgment, is procedurally improper.  Under Rule 54, "[c]laims for attorneys' fees and related non-taxable expenses shall be made by motion unless the substantive law governing the action provides for the recovery of such fees as an element of damages to be proved at trial."  FED. R. CIV. P. 54(d)(2)(A).  Further, under the Rule the motion must be filed within 14 days

19

of the "entry of judgment." FED. R. CIV. P. 54(d)(2)(B).  Although ERISA provides for attorney fees, *see* 29 U.S.C. § 1132(g), such fees are not an element of damages to be proved at trial.  *See Bender v. Freed*, ___ F.3d ___, ___, 2006 WL 240562, at *2 (7th Cir. Feb. 2, 2006).  Thus, plaintiffs' request for attorney fees is governed by Rule 54.  *See id.*  In accordance with Rule 54, the proper procedure is for plaintiffs to file a separate motion for attorney fees after judgment has been entered.  *See id.*  Because judgment has yet to be entered, and plaintiffs have not filed a separate motion for attorney fees, the Court should deny plaintiffs' motion for summary judgment to the extent it seeks an award of attorney fees.  This denial should be without prejudice to plaintiffs' right to seek such fees through a properly filed Rule 54(d)(2) motion.

F.    *Conclusion*

In view of the foregoing, the Court should conclude that there is no genuine issue of material fact with respect to Count I of the complaint, seeking confirmation of the arbitrator's award, because defendants' challenges to that award are untimely as a matter of law.  Accordingly, the Court should grant plaintiffs' motion for summary judgment with respect to this Count, and should deny defendants' cross-motion for partial summary judgment.  The Court should also conclude, however, that genuine issues of material fact remain with respect to the accuracy of the audit, and therefore the Court should deny plaintiffs' motion for summary judgment with respect to Count II of the complaint.  Finally, the Court should deny plaintiffs' motion for summary judgment to the extent that it seeks an award of attorney fees, without prejudice to plaintiffs' right to seek such fees through a properly filed motion under Rule 54(d)(2).

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation,

but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 2/8/06

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on February 8, 2006.

s/Eddrey Butts
Case Manager